## GAGE *v.* WHITTIER.

A sale by a mortgagor of chattels, without the assent of the mortgagee in writing, as required by the Revised Statutes, chapter 132, section 8, is so far void that an action will not lie to enforce it; yet, being consummated by the delivery of the chattel and payment of the price, will pass the title, if there be no other impediment.

In an action of trover by a mortgagee for the mortgaged chattel, the defendant may show that it was sold by the mortgagor, and that the plaintiff assented by parol to the sale; such assent being sufficient, with the sale, to pass the title to the purchaser in possession.

In an action of trover it is no defence that the defendant, in disposing of the chattel, acted as the servant of another.

If, in an action to recover a mortgaged chattel, the defence be, that the plaintiff's debt has been paid by another chattel embraced in the same mortgage, and subsequently received by him under circumstances to charge him with its value, the mortgagor is a competent witness to prove the value of the chattel so received.

TROVER for a horse. The plaintiff claimed the horse by virtue of a mortgage made by Seth Conant and Samuel Bradbury, Jr., to the plaintiff, on the tenth day of September, 1842, to secure the payment of a promissory note for the sum of one hundred dollars, made by the mortgagors jointly and severally, and payable to the plaintiff, or bearer, on the first day of January, then next, with interest. The property mortgaged was described as follows: "One of Powers's threshing machines that we have bought of him; one sorrel mare that S. Bradbury, Jr., had of Chauncey Cutting; also, two new harnesses." The execution of the mortgage, in Lyme, where the mortgagors resided, was admitted.

The plaintiff proved the mare in the possession of the defendant, and that he demanded her of the defendant on the 15th day of August, 1843, to which demand the defendant answered, "that he did not own the mare, and had no part or lot in the matter, nor never had." The

Gage *v.* Whittier.

plaintiff proved that while the mare was in the possession of the defendant, he said he had her of a Mr. Baldwin, of Strafford, in the State of Vermont, in payment of a debt which Baldwin owed him.

The defendant then offered to prove that Bradbury was the sole owner of the mare, and that in the fall of the year 1842, after the date of the mortgage, Bradbury, with the assent of Gage, the mortgagee, which assent, however, was not in writing, exchanged her for a horse with a Mr. Waterman, of Thetford, in Vermont; but the court ruled that the evidence was inadmissible, and the defendant excepted to the ruling.

The plaintiff offered the deposition of a witness who deposed that he took the mare from the upper end of the street, in Concord, to Boston to sell, at the request of and for the defendant; that he did not sell her, but left her at Taunton, Massachusetts, with a Mr. Kimball to be sold, about the tenth day of April; and that when he parted from Kimball he was going on to New-Bedford with the mare, and that the defendant said this was the same mare for which he had been sued by the plaintiff.

The defendant then offered to prove that one Mark Baldwin, of Strafford, in Vermont, was indebted to the son of the defendent, Moses Whittier, in the sum of about $250, and that Baldwin had failed; that the defendant went to Vermont in the winter of 1843, and Moses requested him to take his note against Baldwin, call upon him, and make the best settlement with him he could; that the defendant took the note, called on Baldwin, and received of him the mare in controversy in payment of the note; carried her to Grafton, and delivered her to Moses Whittier; that the defendant never had any interest in the note or mare; but in all he did in relation to her, acted merely as the servant of his son Moses, who sold the mare in Boston, in June, 1843. The court ruled that the evidence was inadmissible, and the defendant

excepted to the ruling. It did not appear whence Baldwin derived his title to the mare, nor did the defendant propose to prove that he had any title to her. The plaintiff contended that the defendant was a mere stranger, and could not contest the plaintiff's title under the mortgage.

It appeared that the note upon which the mortgage was founded was given for the price of the threshing machine mentioned in the mortgage. The plaintiff proved that, in the month of January, 1843, the condition of the mortgage having been broken by the non-payment of the note, he took the machine into his possession, and having advertised it for sale, for the purpose of foreclosing the mortgage, sold it at public auction on the 14th day of the same month, to one Piper, for about $20, and that he was not accountable for more than that sum, if he were accountable for any sum whatever. The defendant contended that the sale was not conducted in good faith, but was fraudulent, and that the machine was, at the time of the sale, worth more than the sum due on the note.

To prove that the sale was not in good faith on the part of the plaintiff, the defendant offered a witness who testified that the sale was made at the barn of the witness; that there were present at the sale, the plaintiff, the auctioneer, Piper, the witness, and three other persons; but that neither Bradbury nor Conant, the mortgagors, were present; that before the machine was struck off the plaintiff and Piper went aside together, and then returned, and the machine was struck off to Piper; that after the sale the plaintiff requested the witness to permit the machine to remain at the barn for a short time, to which the witness assented; and that afterwards the plaintiff came with his team and carried the machine away, and that Piper disclaimed all title to it.

The defendant contended that at the time of the sale the machine was much more valuable than it was at the

time of the purchase from the plaintiff, by reason of repairs made upon it by Bradbury and Conant while it was in their possession. To prove the repairs on the machine, and its value, the defendant, among other testimony, offered Conant, one of the mortgagors, as a witness, who was objected to by the plaintiff as incompetent from interest, and excluded by the court.

The plaintiff excepted to the evidence of what passed at the sale, and of the value of the machine, on the ground that he was entitled to hold all the property mortgaged until it was redeemed by payment of the debt, and that, on a breach of the condition of the mortgage, the plaintiff's title became absolute at law, to the whole property, and that neither the mortgagees nor any one under them could have any right, unless by redemption in equity under the statute. The court admitted the evidence, and instructed the jury that if the sale at auction was in good faith and without fraud, the plaintiff was not accountable for a larger sum than the machine was sold for; but that if the sale was not in good faith, the plaintiff was bound to account for the actual value of the machine at the time of the sale; and that in such case the sum for which the machine was sold would not be the criterion of its value; and that, as the plaintiff had foreclosed the mortgage on the machine, if, at the time of the sale, it was worth as much as the sum due upon the note, the plaintiff was not entitled to recover in this suit, as the debt due the plaintiff would be discharged and paid. The court directed the jury to find the value of the mare at the time of the conversion, and the value of the machine at the time of the sale; and instructed them if the sale was in good faith that they should return the value of the machine at the price for which it was sold; but if it was not in good faith, they should return the actual value of the machine at the time of the sale. The jury

found the value of the mare to be $39.66, and the value of the machine, at the time of the sale, to be $79.75.

The defendant also contended, that inasmuch as he purchased the mare in Vermont, of a citizen of Vermont, he bought her discharged of the mortgage; and that question was reserved for the decision of this court.

A verdict was taken by consent for the plaintiff, for the value of the mare, upon which judgment was to be rendered; or it was to be amended and judgment rendered for so much of said value as the plaintiff was entitled to'; or it was to be set aside, and a new trial granted, as this court should direct.

 · *Wilcox*, for the plaintiff. An exchange is in substance the same thing as a sale, within the meaning of the statute, prohibiting the sale of mortgaged property by the mortgagor. 2 Kent 448; Blackstone 444, 447; Chit. on Contr. 297; Shep. Touchst. 234; 3 Barn. & Cressw. 40; 2 Hill 74; 21 Wend. 83.

 . The general rule is, that where a contract is prohibited with a penalty, the contract is void. 10 Bing. 107; Chit. on Contr. 539.

Contracts, the form of which is prescribed, cannot be made otherwise than as prescribed; and if made otherwise, can not be given in evidence. Chit. on Contr. 261; 4 Barn. & Cr. 922. Parol contracts, within the statute of frauds, if wholly unexecuted, are void. The law prohibiting sales of mortgaged property, without the written assent of the mortgagee, was designed to preclude all question as to the power of the mortgagor to sell. It was made to prevent sales, except with such written assent. The mortgagee's assent was not given in this case in the form prescribed. His subsequent assent was unavailing unless given in the same manner. 5 N. H. Rep. 132.

The taking was a conversion. 6 East 540; 2 Stark. 311. No demand was necessary. 2 Fairf. 28; 19 Maine 427; 11 Wend. 80.

The defendant's character, as agent, is no protection. 3 Car. & P. 36.

Upon condition broken, the plaintiff was entitled to the possession of the property till the debt was paid. The sale is absolute at law. The right in equity to redeem remains only. 8 N. H. Rep. 361; 9 *id.* 404; 18 Mass. 387.

Conant was an interested witness. 9 N. H. Rep. 137. A sale of the property in Vermont was not a sale in market overt. 10 N. H. Rep. 46; 12 *id.* 248; 15 Vt. 630.

*Kittredge,* for the defendant.

Woods, J. The plaintiff derives his title to the mare through a mortgage made by Conant and Bradbury, and a question arose at the trial, whether he had parted with that title. To prove that he had done so, the defendant offered to show that one of the mortgagors, who owned the animal, had sold her to Waterman, and that the plaintiff agreed to this sale. The evidence was rejected, because the consent of the mortgagee was not in writing, as required, for certain purposes, by the Rev. Stat., chap. 132, sec. 8. The first question presented is upon the correctness of that ruling; and the solution of that depends upon the meaning and intent of the statute referred to.

It provides that no mortgagor of personal property shall sell or pledge the same without the written consent of the mortgagee entered upon the mortgage, and upon the margin of the record in the office in which it is recorded. The 9th section of the same chapter provides a punishment for such as offend in that article.

These provisions were designed for the protection of mortgagees, who were liable, by means of the fraudulent practices of mortgagors in selling or pledging the mortgaged chattel, and so causing it to pass into other hands, and to be removed to distant places, to be put to incon-

venience in preserving it, or in recovering possession of
it.  Its further design was to protect from imposition such
as might be induced, through ignorance of the title of the
mortgagee, to become the purchaser of the mortgaged
chattel, and to pay value for it.

To secure those objects the statute imposes a restraint
upon the mortgagor, and prohibits the sale of the prop-
erty.  It does not in terms prohibit a purchase of it, or
declare such a transaction void.  The sale being prohib-
ited, and a penalty inflicted upon the seller, the transac-
tion, as to him, is void, and he could not, according to the
well established principle, maintain an action for the
avails of such a sale, or founded in any manner upon such
illegal transaction.

But it is another thing to say, that one who has pur-
chased a mortgaged chattel, and paid value for it, and
taken it into his possession, shall take nothing by his pur-
chase, and acquire by it no right to retain the possession,
merely upon the ground that the sale was prohibited by
law, and that a penalty was provided against the party
making the sale.

In *Roby* v. *West*, 4 N. H. Rep. 289, which was trover
for lottery tickets, the court say : " It is the sale, and not
the purchase, which is prohibited ; and if nothing ap-
peared in the contract between the parties more than sim-
ply a sale of the tickets from the defendants to the plain-
tiff, we should be induced to pause before we permitted
them to allege the illegality of their own act, for the pur-
pose of enabling them to retain the proceeds of a fortu-
nate ticket, after they had sold it to the plaintiff, and
induced him to take and actually run the risk of its
proving an unfortunate number.  In such a case the
parties could not be viewed, perhaps, as *in pari delicto ;* and
although the vendor of the ticket might not be legally
entitled to recover the price for which he might have sold
it, in a court of justice, it is by no means clear that the

purchaser might not be entitled to recover the value of the ticket in a suit against the vendor, when he had obtained possession of it by wrong."

In the case under consideration there is no ground upon which Waterman can be said to have been a participant in the offence committed by the mortgagor, Bradbury, in selling the mortgaged chattel. He was rather the party against whom the offence was committed, and one for whose protection the statute was designed. For there is no evidence that he knew of the existence of the mortgage, or had any notice which should have put him upon an inquiry; so that he stands even upon better ground than the holder of property under a sale which was prohibited by law, in the case put by the court in *Roby* v. *West.*

There seems, therefore, to be no sufficient reason for holding that the illegal act of the mortgagor, in selling the property without the written assent of the mortgagee, necessarily prevented the title from passing by that sale, upon the mere ground that the sale was an offence punishable by law.

The object of the statute having been such as has been described, the protection, namely, of the mortgagee and of the public generally, against the fraudulent act of the mortgagor, it seems to have had no further object. It was no part of its design to interpose any restraint upon the alienation of personal property, with the assent of the mortgagee, against whom a title may be acquired, as it would seem, as well since as before the statute, by any proper evidence of his having assented to the sale, or of his having become a party to it. The mortgagor cannot safely or legally proceed without the written assent of the mortgagee in the form indicated by the statute. But the statute does not require any thing not previously required, in order to give a good and sufficient title to the purchaser of the mortgaged chattel. As between the pur-

chaser and the mortgagee, the evidence of the assent of the latter to the sale, or of his participation in it, is not different since the passing of the law from what it was before. As against the mortgagee, the attempt of the mortgagor to pass the property was ineffectual before the statute as it is since, and it was not the object of the statute to strengthen the title of the mortgagee, or to interpose any additional forms to be observed by him in parting with it, but only, as has been said, to prevent the loss and inconvenience arising, in various ways, from the attempts of a fraudulent mortgagor to dispose of the property against the rights of the mortgagee.

There was, therefore, no valid objection, founded upon the statute, against showing, by parol evidence, that the sale to Waterman received the assent of the plaintiff, and that by that sale he had parted with his title to the chattel. The ruling was in this respect, therefore, erroneous.

At the trial the defendant undertook to protect himself upon the ground that he was the mere agent of another, and that he had, in the execution of his engagement as such agent, received the mare of one Baldwin, of Thetford, in the State of Vermont.

It does not appear that Baldwin's possession of the chattel was other than that of a mere trespasser. If not, the possession of the defendant derived from him was that of a wrong-doer, and his delivery of the chattel to his employer, an act of the same character. 2 Phil. Ev. 224, note.

*Perkins* v. *Smith*, 1 Wis. 328, was the case of goods lawfully taken and disposed of by a servant for the use of the master; and it was held, that the authority of the master would not, in such case, amount to a defence.

In *Stephens* v. *Elwell*, 4 M. & Sel. 259, the defendant was a clerk, and, at the direction of his employer, ordered the goods to be shipped, and in defence relied upon his position as the mere servant of the party who had tor-

Gage *v.* Whittier.

tiously possessed himself of the goods, and upon his ignorance of the master's title. Lord *Ellenborough*, C. J., said : " The only question is, whether this is a conversion by the clerk, which was undoubtedly such in the master. The clerk acted under an unavoidable ignorance, and for his master's benefit when he sent the goods to his master ; but, nevertheless, his acts may amount to a conversion ; for a person is guilty of a conversion who intermeddles with the property of another and disposes of it ; and it is no answer that he acted under authority from another, who had himself no authority to dispose of it."

In *Greenway* v. *Fiske & a.*, 1 C. & P. 190, which was trover for goods which the plaintiff had entrusted with J. & H. Edes for sale, who had pledged the goods with the defendants ; one of the defendants submitted that he was not liable in trover, inasmuch as he had merely shipped the goods in the ordinary course of his business. *Abbott*, C. J., thought likewise. "The distinction between this case and that of a servant is, that here there is a public employment ; and as to a carrier, if, while he has the goods, there be a demand and a refusal, trover will lie ; but while he is the mere conduit pipe in the ordinary course of trade, I think he is not liable."

These cases show that although not every one who, in the discharge of an employment, in its nature public, interferes with the goods, is liable in tort ; yet in general a servant is not protected by his relations against the operation of the general rule of law, which renders him liable who disposes of the goods of another against the rights of the owner. The rule is clearly applicable in this case. The defendant was the mere servant of the principal author of the wrong, and was not required by any public duties or relations to serve his principal in the act complained of. He is equally liable, whether he performed it for his own benefit or for that of another.

A question arose at the trial, supposed to affect the

plaintiff's right to recover in the case, or at least to affect the *quantum* of damages. It was whether the sale of a machine, mortgaged in conjunction with the mare, and for the security of the same debt, had been fairly conducted, and if not, what the value of the machine was at the time of the sale for which the plaintiff ought to be charged. If the machine was worth enough to pay the debt, and the sale of it had been made by the plaintiff in such a fraudulent manner as to charge him with that value, the mare became exonerated, in the hands of the mortgagees, of the charge created by the mortgage, and the sale made by Bradbury could not be impeached by the plaintiff, otherwise, the sale was contrary to the rights of the mortgagee, who could consequently recover in this action, to the extent of the damage sustained.

Upon the question of the value of the machine at the time of the sale, the testimony of one of the mortgagors, (Conant) offered to sustain a high valuation assigned to it by the defendant, was objected to by the plaintiff, upon the ground that the witness had an interest to show that the debt secured by the mortgage, and for the payment of which he was personally liable, was reduced and extinguished to the extent of the actual value of the chattel sold.

If this action were one which could conclude the rights of the plaintiff against the witness, as to the amount of the debt due or paid, the objection might have a foundation. But such is not the effect of the action, or of any judgment that can be rendered in it. The valuation to be placed on the machine is, in one event, a matter in which the witness, the debtor and mortgagor, may have an interest; because, in that supposed event, it is applicable to the extent of its real value to the payment of the debt. But in this action it cannot be so applied. Nor can a judgment in this, founded upon a valuation of the chattel upon evidence here adduced, be evidence in any question

that may hereafter arise between the plaintiff and the witness, in which it may be material to ascertain the value. The witness was, therefore, improperly adjudged to be incompetent to testify upon the point to which he was called.

The debt for which the machine and the mare were mortgaged was $100. The value of the machine, as found by the jury, was materially less than that sum. The right of the plaintiff to recover in the suit could not have been defeated, therefore, by the application of the whole value of the machine; and the question whether the plaintiff, in case he had been found guilty of the misconduct imputed in connection with the sale of the machine, and in case its value had been equal to the debt, could have maintained the action for the mare, becomes immaterial.

*Verdict set aside.*